**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **XENOS BIORESOURCES, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case number 4:05cv0392 TCM** |
| ) | |
| **SIOUX BIOCHEMICAL, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM AND ORDER**

Pending before the Court[1] is the motion of defendant, Sioux Biochemical, Inc. ("SBI"), to dismiss this matter for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2); to dismiss it for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1); or to transfer the case to the United States District Court for the Northern District of Iowa, pursuant to 28 U.S.C. § 1404(a). [Doc. 3]

**Background**

Xenos Bioresources, Inc. ("Xenos"), a California corporation with its principal place of business in Santa Barbara, California, and SBI, an Iowa corporation with its only place of business in Sioux City, Iowa, entered into an agreement in October 2000 (the "Agreement"). (Compl. Ex. A; Def. Ex. A1 at 1; Kramer Aff. ¶¶ 2, 4; Wolf Aff. ¶ 2.) The Agreement was for a period of three years. (Compl. Ex. A.) Alleging that SBI had misled

---

[1]The case is before the undersigned United States Magistrate Judge by written consent of the parties. See 28 U.S.C. § 636(c).

it after those three years by continuing to conduct business with Xenos as if the Agreement was in full force and effect and further alleging that SBI had subjected itself to jurisdiction in Missouri by conducting business in St. Louis County, Xenos sued SBI in the Circuit Court for St. Louis County for fraudulent misrepresentation (Count I); negligent misrepresentation (Count II); tortious interference with a contract (Count III); equitable relief (Count IV); and an action on account (Count V). SBI timely removed the case to federal court on diversity grounds, see 28 U.S.C. §§ 1332(a)(1), 1441(a), and now challenges the exercise of personal jurisdiction over it.

In the Agreement, SBI granted Xenos "the non-exclusive worldwide marketing right" to sell certain products of SBI. (Compl. Ex. A ¶ 1.) The Agreement further provided that Xenos was an independent contractor and was not authorized to make any representations or statements about SBI's products which were not authorized or directed by SBI. (Id. ¶¶ 2, 9.) SBI was to furnish Xenos, without cost, information about its products and was to provide technical assistance to Xenos for the promotion and sale of SBI products. (Id. ¶ 10.) Xenos was to receive commissions of 10% on designated SBI products to three customers listed in an exhibit to the Agreement. (Id. ¶ 3.) For those three customers, purchase orders were to issue to SBI and SBI would invoice the three directly for the sale. (Id.) One customer was in Kansas, one in California, and one, Sigma Chemical Company ("Sigma"),

was in St. Louis, Missouri.  (Id. Ex. C.)  All sales were "F.O.B. Sioux Center, Iowa."[2]  (Id. ¶ 6.)

Additionally, the parties agreed that their Agreement was to be governed by the laws of Iowa and that "jurisdiction shall be in the State of Iowa."  (Id. ¶ 14.)  The Agreement was negotiated in Iowa, and was signed by SBI's president in Iowa and by Xenos' president in California.  (Wolf Aff. ¶ 7; Kramer Aff. ¶ 7.)  All subsequent communications between Xenos and SBI occurred in either Iowa or California.  (Kramer Aff. ¶ 9.)

SBI does not maintain, and has never maintained, any office or agency within the State of Missouri; does not have any employees or agents within this State; and has never entered into a contract (i) with any person or company within this State or (ii) which was or is to be performed within this State.  (Id. ¶ 13.)  And, SBI owns no property in this State,  has no registered agent here, does not advertise here, and is not registered with the Missouri Secretary of State to conduct business here.  (Id. ¶¶ 14, 18, 20, 21, 22.)  SBI's agents and employees have not come to Missouri to transact business.  (Id. ¶ 19.)  SBI does have customers in Missouri, but the negotiation of sales to these customers occurs in Iowa and all sales made to Missouri customers have been F.O.B. Sioux Center, Iowa.  (Id. ¶¶ 15, 16.)

On the other hand, the president of Xenos, Thomas Wolf, is also the president and shareholder of Xenos Nutraceuticals, Inc. ("XNI"), a Missouri corporation with its principal

---

[2]Section 554.2319 of the Iowa Code reads, in relevant part:  "(a) when the term is F.O.B. the place of shipment, the seller must at that place ship the goods in the manner provided in this Article . . . and bear the expense and risk of putting them into the possession of the carrier; . . ."  Iowa Code § 554.2319(1)(a).  F.O.B. Sioux Center, Iowa, "means that the seller was contractually obligated to make delivery in [Sioux Center, Iowa], not elsewhere."  **Bell Paper Box, Inc. v. U.S. Kids, Inc.**, 22 F.3d 816, 819 (8th Cir. 1994) (quotations omitted; alteration added).

place of business in St. Louis County.  (Wolf Aff. ¶ 3.)  XNI is an agent for Xenos and provides Xenos office space in St. Louis.  (Id.)  Wolf traveled to St. Louis, Missouri, at least three times a year to meet with Sigma and negotiate and market products on SBI's behalf.  (Id. ¶ 10.)  If Sigma decided to purchase SBI products, a purchase order would be completed either by Wolf or by Sigma and would be sent to SBI from St. Louis.  (Id. ¶¶ 11, 12.)  SBI would bill Sigma directly and would be paid by Sigma directly.  (Id. ¶¶ 13, 14.)  Wolf would then receive a commission from Sigma for the sale.  (Id. ¶ 14.)

## Discussion

SBI first challenges the exercise in Missouri of personal jurisdiction over it.

"When personal jurisdiction is challenged, the plaintiff has the burden to show jurisdiction exists." **Burlington Indus., Inc. v. Maples Indus., Inc.**, 97 F.3d 1100, 1102 (8th Cir. 1996) (citing Gould v. P. T. Krakatau Steel, 957 F.2d 573, 575 (8th Cir. 1992)).  To survive a motion to dismiss challenging personal jurisdiction, however, "the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant," **Digi-Tel Holdings, Inc. v. Proteq Telecomms., Ltd.**, 89 F.3d 519, 522 (8th Cir. 1996), and "may do so by affidavits, exhibits, or other evidence[,]" **Romak USA, Inc. v. Rich**, 384 F.3d 979, 983 (8th Cir. 2004) (alteration added).  Accord **St. Paul Fire and Marine Ins. Co. v. Courtney Enter., Inc.**, 270 F.3d 621, 623 (8th Cir. 2001).  When determining whether a plaintiff has made such a showing, "the court must view the evidence in the light most favorable to plaintiff and resolve all factual conflicts in the plaintiff's favor," **Digi-Tel Holdings**, 89 F.3d

at 522; however, the burden remains with the plaintiff to establish the court's in personam jurisdiction, **Romak USA, Inc.**, 384 F.3d at 983-84.

"In a diversity action, [a] federal court . . . may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." **Id.** (interim quotations omitted; alterations in original).  Accord **Digi-Tel Holdings**, 89 F.3d at 522.  The "'ultimate objective'" of Missouri's long arm-statue[3] is "'to extend the jurisdiction of the courts of [Missouri] over nonresident defendants to that extent permissible under the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States.'" **Clune v. Alimak AB**, 233 F.3d 538, 541 (8th Cir. 2000) (quoting State v. Pinnell, 454 S.W.2d 889, 892 (Mo. 1970) (en banc)) (alteration added). "Accordingly, Missouri courts have interpreted the statute broadly to cover those cases where the Due Process Clause permits the assertion of personal jurisdiction." **Id.**  Thus, this Court may "turn immediately to the question whether the assertion of personal jurisdiction would violate the due process clause." **Porter v. Berall**, 293 F.3d 1073, 1075 (8th Cir. 2002). Accord **Romak USA, Inc.**, 384 F.3d at 984.

---

[3]Missouri's long arm statute, Mo.Rev.Stat. § 506.500, provides, in relevant part, as follows:

1.      Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:

> (1)     The transaction of any business within this state;
>
> (2)     The making of any contract within this state;
>
> (3)     The commission of a tortious act within this state; . . .

"The principles of personal jurisdiction under the Due Process Clause are well established. Jurisdiction is appropriate only where a defendant has sufficient 'minimum contacts' with the forum state that are more than random, fortuitous, or attenuated, such that summoning the defendant would not offend traditional notions of fair play and substantial justice." **Pecoraro v. Sky Ranch For Boys, Inc.**, 340 F.3d 558, 561 (8th Cir. 2003). Accord **First Nat'l Bank of Lewisville, Ark. v. First Nat'l Bank of Clinton, Ky.**, 258 F.3d 727, 729 (8th Cir. 2001). "A defendant must have warning that his activities may result in his being haled into court in a particular jurisdiction and must invoke the benefits and protections of that jurisdiction by purposefully availing himself of the privilege of conducting those activities." **Porter**, 293 F.3d at 1075. "Minimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit." **Pecoraro**, 340 F.3d at 562.

In determining whether personal jurisdiction over a nonresident defendant is appropriate, the court should exam "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." **Burlington Indus., Inc.**, 97 F.3d at 1102. The first three considerations are closely related and are of primary importance. **Id.** Analysis of the third factor includes considerations of specific jurisdiction compared to general jurisdiction. **Id.** Specific jurisdiction exists "only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state." **Romak USA, Inc.**, 384 F.3d at 984. "General jurisdiction

refers to the power of a state to adjudicate any cause of action and does not depend on the relationship between the cause of action and the contacts." **Burlington Indus., Inc.**, 97 F.3d at 1103.

For the reasons set forth below, both specific and general jurisdiction are lacking in the instant case.

The parties' dispute centers on an Agreement entered into by a California corporation and an Iowa corporation. It was negotiated in Iowa and signed either in Iowa or California. The only Missouri contact is the presence of Sigma, a customer of the Iowa goods sold by the California corporation. The presence of Sigma leads to purchase orders for those goods being completed in St. Louis, but not by SBI, and sent from St. Louis.

In **Porter**, 293 F.3d at 1076, the Eighth Circuit Court of Appeals found that the resident plaintiffs had failed to establish personal jurisdiction over a nonresident defendant based only on "numerous" phone calls and the exchange of letters. Similarly, in **First Nat'l Bank**, 258 F.3d at 729, the Court affirmed a district court's conclusion that it lacked personal jurisdiction over a nonresident bank who had no office or other place of business in the forum state, was not registered to do business in the forum state, and did not solicit customers or accounts from residents of the forum state. The bank's only contact with the resident bank/plaintiff was a cashier check made payable to two residents and telephone calls to the forum state about the proper endorsements of the check.

The lack of sufficient contacts is even more evident in the instant case. Neither party is a resident of the forum state. The only resident of a forum state is a customer of Xenos

that purchased goods from SBI. Those goods were produced in Iowa and were delivered in Iowa. SBI's employees did not enter Missouri, did not market or initiate the sale of their products to Sigma, and did not negotiate or otherwise complete the resulting purchase orders. Other than receiving and signing the purchase orders from a Missouri business, SBI had no connection to Missouri.

Xenos argues, however, that it became SBI's agent in Missouri when it entered the Agreement. This characterization of its position is in direct contradiction with the terms of the Agreement defining Xenos as an independent contractor and with the undisputed facts. Xenos would, by this argument, have the Court exercise personal jurisdiction over a nonresident defendant based only on the contacts of a nonresident plaintiff.

"The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the *defendant* purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." **Hanson v. Denckla**, 357 U.S. 235, 253 (1958) (emphasis added). "'Merely entering into a contract with a forum resident does not provide the requisite contacts between a [nonresident] defendant and the forum state." **Bell Paper Box, Inc. v. Trans Western Polymers**, 53 F.3d 920, 922 (8th Cir. 1995) (quoting Iowa Elec. Light & Power Co. v. Atlas Corp., 603 F.2d 1301, 1303 (8th Cir. 1979)) (alteration in original).

In **Trans Western**, the plaintiff manufacturer operated its business from South Dakota, and sued the defendant purchaser, a California company, in South Dakota. **Id.** at 921. A California broker, employed by plaintiff to solicit business, had secured an order for plaintiff from the defendant. **Id.** Plaintiff and defendant had communicated by telephone, facsimile, and mail, and the purchase order had specified "F.O.B. Livermore, California" – the defendant's place of business. **Id.** Noting that "[a]ctions by [the nonresident defendant] *itself* must have created a 'substantial connection' with the forum" and that defendant's only connection with the forum state was "a single purchase order," the Court found that personal jurisdiction over the defendant was lacking. **Id.** at 922 (alterations added). The Court also repeated its earlier holding in <u>Iowa Elec. Light & Power Co.</u>, 603 F.2d at 1303, that "'[m]erely entering into a contract with a forum resident does not provide the requisite contacts between a [nonresident] defendant and the forum state.'" **Id.** (first alteration added, second in original). Additionally, in distinguishing the case before it from one in which personal jurisdiction over a nonresident defendant was found to be present, the Court further held that the "F.O.B. Livermore, California" meant that the defendant had not sought the benefits of police and fire protection from the forum state. **Id.**

In the instant case, the Agreement provides for "F.O.B. Sioux Center, Iowa." Consequently, SBI is not seeking the benefit of Missouri police and fire protection.

In **CPC-Rexcell, Inc. v. La Corona Foods, Inc.**, 912 F.2d 241 (8th Cir. 1990), CPC-Rexcell, a Missouri company with its principal place of business in Missouri, made yogurt containers for La Corona, an Arizona corporation, and subsequently sued La Corona in

Missouri.  **Id.** at 242.  La Corona's contacts with Missouri consisted of numerous telephone and telefax orders to CPC's St. Louis office to purchase $1.7 million worth of goods and payments by La Corona for those goods to a St. Louis lockbox.  **Id.**  All goods were shipped to Arizona or California.  **Id.** at 243.  La Corona had no authority to do business in Missouri, had no agent or no real estate in Missouri, and made no personal visits to Missouri.  **Id.**  The paperwork on the sales was produced in St. Louis.  **Id.**  Even though the parties shared a continuous and substantial relationship outside of Missouri, these contacts were found to be insufficient to establish personal jurisdiction in Missouri over La Corona.  **Id.**  Cf. **U.S. Kids, Inc.**, 22 F.3d at 819 (holding that there were sufficient contacts with forum state by nonresident defendant whose representatives visited the forum state, the contract was entirely performed in the forum state, and the product was shipped F.O.B. the forum state).

There is less contact with Missouri by SBI than La Corona had.  This paucity of contacts is insufficient to establish sufficient minimum contacts for the exercise of personal jurisdiction over SBI.

Because the Court finds it lacks personal jurisdiction over SBI, it declines to reach SBI's alternative arguments for dismissal or transfer.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of Sioux Biochemical, Inc., to dismiss this action is **GRANTED.**  [Doc. 3]

An appropriate Order of Dismissal shall accompany this Memorandum and Order.

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this <u>22nd</u> day of July, 2005.